Good morning, Your Honors. May it please the Court, Counsel, my name is Richard Wall. I represent the appellant, in this case, Antonio Crawford. And I would like to reserve two minutes for rebuttal if I go that long. I think really the big issue in this case is the way overall this case was it becomes very clear that Mr. Crawford was not convicted or tried and convicted for the particular acts that he was charged with having done. He was convicted for who he was and, in part, what he had done in the past. But before I get to that, I want to talk a little bit about the suppression motion issue and the search warrant in this case. The search warrant for Mr. Crawford's home, in this case, was issued on the basis of a warrant that outlined information that was obtained from the confidential informant, indicating that he had engaged in drug deals with Mr. Crawford and that there was a history with Mr. Crawford and the CI. And then based on that, the affidavit requested a warrant to search a particular address, asserting that that was Mr. Crawford's residence. But there was really not very much evidence in that affidavit to indicate that, in fact, it was Mr. Crawford's residence. What was in the affidavit was the officers, the information the officer obtained that Mr. Crawford was listed as the person who had purchased the residence, I'm sorry, purchased the address, that Mr. Crawford, that same information, MetroScan, which was really not explained what MetroScan is or what kind of information is in MetroScan, but that indicated that Mr. Crawford's mailing address was in California. The other information that was presented was that a person by the same name and with a similar Social Security number was the subscriber to the utilities for that address. And that was really pretty much it. Now, in this circuit, and I believe most other circuits, if not all other circuits, there is a special rule regarding searching the residence of someone who's suspected of being a drug dealer. And basically, once you've established that they are involved in drug dealing activities, the law allows a search warrant to issue for the residence on the theory that drug dealers are likely to keep evidence in their residences. But the problem here is there's really not enough evidence to establish, as a matter of probability, that this particular address was, in fact, Mr. Crawford's residence. There was no information that he had ever been observed there, that any of his vehicles had ever been observed there. There was really no evidence that this was, in fact, a residence. It was just an address. And the only connection between this address and Mr. Crawford was that he was listed as a purchaser, and I don't believe the affidavit even put a firm time frame on that, but that he was listed as a purchaser, that he had a mailing address that was actually in California, and that he was listed as a subscriber to utilities. Well, there also was, Willis said he lived in that area, which is where the house was situated in the Indian Wells or Indian Trails. Indian Trails is the general area. I believe, though, if you look at that affidavit, there's no indication of what the basis of that statement was, what his basis of knowledge was for that statement, how he knew that Mr. Crawford supposedly lived in that area. I'm not sure he would have to have a basis. There's other evidence that you've mentioned that the man's the owner of the house and pays the utilities. Now someone else says he lives in the area, and that person who said it said he had dealings with him, right? So wouldn't that normally be enough of a basis, a foundation, that you've had dealings with somebody to say where they live? Or do you have to say I went to his or her home? We believe that does not provide a sufficient basis, because what you're talking about is establishing a probability, not just a possibility or some connection to a particular residence, but you have to establish that it is the residence. If you don't establish that it's the residence, then the whole theory of issuing the search warrant on this idea that a suspected drug dealer will keep evidence at his residence goes away. That's no longer valid if you haven't established that it's a residence and that that's the person's residence. So I don't believe that is enough. What is the Indian Trails area? How big is it? Does it include more than just residences? How many potential residences are there? And again, what was Mr. Willis's basis for his belief that Mr. Crawford lives somewhere in that area? This is really a very fact-based issue, but in looking at other cases that have dealt with this, generally there is something that the police officers have done that establishes a probability or a high likelihood that the person actually resides at the address to be searched. And I don't believe we have that in this particular case. Before coming over here, I looked for some more recent cases to see if I could find some examples. I was only able to find an unpublished opinion in which you don't want to hear about. In which that won't help you. I don't want to know about that. Or I'm not permitted to know about it. But I think there are ways that police officers can establish the necessary evidence and the necessary facts to get a search warrant under these circumstances that are really fairly easy to do and I think should be required so that they're not going out and raiding the homes of people who are not involved in this kind of activity. Certainly if someone who's suspected of being a drug dealer owns property and rents those properties out to other people, simply establishing that the suspected drug dealer owns that particular premises and maybe is responsible ultimately for the utilities would lead to a lot of people having their homes searched when they have no connection whatsoever with any illegal activity. They simply happen to be renting a particular place. And again, I don't believe this affidavit even establishes that this particular address was a residence or that it was occupied by anyone. They never went to the house. They didn't get information from any kind of public source where Mr. Crawford had listed this particular address as his residence. So it was really, there was some connection, but I don't believe that there's enough of a connection to say that in this case it was probable, more likely than not, that he actually lived there. And I think there's a significant problem with allowing officers to go forward on that kind of thing. Could it actually be more probable than not or can it just be a fair probability that he lives there? Well, I think the term probable, when you talk about probable cause by itself, implies more likely than not that something will occur. I think there's some precedent of the Supreme Court suggesting it's not like a 51 percent thing. And I understand that that is the case. But that's, I'm not sure that's been spelled out, clarified exactly that there, I'm not suggesting there is a percentage that you have to look at. But there would have to be evidence from which an ordinary person would look at and say, I think it's likely that that's going to occur or that if I go there I'm going to find a particular thing. If you go to the track and bet on a horse, you don't bet on a horse because it's possible that he'll win, you'll bet because you think it's more likely that he'll win, that it's probable that he will win. And I think that's what probable really implies. It's been a few years since I went to the track, but even when I can recall doing it in my youth before I became a judge, probably as far as 21, I'll bet. But I can't remember ever thinking it was probable those horses would win. That's why they paid odds. Well, but you wouldn't bet on it if you thought they were going to lose either. So your anticipation is that the outcome is going to be in your favor. And that's what I'm suggesting, that in this case, the evidence that's presented to the magistrate doesn't reach that level that you have confidence that this actually is this person's residence. Too thin an amount of evidence, even if credited, you say to show a probability this was the home of Crawford. Yes, Your Honor. And I think it's important because we're already Yes. We have this general rule that sort of already makes this automatic sort of exception to the specificity that's usually required to show that evidence will be found in a particular place. So we already have made a kind of exception here. And I think it's important that we don't allow that exception to be expanded beyond what is really permissible under the Fourth Amendment. Now, the reason I wanted to start there is because a lot of the evidence that was collected from this address was later admitted to trial. And it was admitted along with statements by Mr. Crawford that he had made to the police regarding his admitted drug dealing activities. But those statements, if you look at those statements in the record, they did not include any admission of any connection with the confidential informant in this case. Much of the discussion you have with officers focused on activity that he had been involved in as much as 10 to 14 years before these particular events happened. Nevertheless, the district court allowed all of that evidence to come in before the jury. And along with evidence that he had put cash down on the car, that he had a Rolex watch when he was arrested, that he had furniture in his house, that he had fancy electronic equipment, et cetera, et cetera. And also, wasn't it fair to say, Mr. Wall, that they put in evidence that his normal, he had these luxury items, if I could call it that. Maybe some of them are now not so expensive, like a DVD player or whatever. But he had expensive watch, expensive furniture. And his regular income from his salary job wasn't that much. I mean, didn't they put in both those elements? Well, I believe that he did tell the officers that he had earned anywhere in the neighborhood of $30,000 to $35,000 a year when he worked. And that he owned a janitor business that he had income from. Didn't he say he'd used some of his drug money to get things? Yes, he did. So, I mean, it doesn't seem to me to be the normal evil where you just say, look, you have all these nice things. You don't look up the class that would have these nice things. Therefore, you must be a drug dealer. He kind of says, well, I got all this nice stuff. You see it. And here's how I got some of it. So it just didn't seem to me to have the same evil here that you do in the typical case where you're worried about class and racial stereotyping. Well, actually, I think the bigger evil here is that, as I said, he was not really tried for these particular alleged deliveries. What he was tried for was being a drug dealer or having been a drug dealer. And if there's any question about whether or not that was really what was being presented to the jury here, I will refer you to pages 241 and 242 of the excerpt of record. And I'll just read this because to me it's quite striking the way the prosecutor presented this in closing argument. He basically tells the jury that even if they don't believe these transactions occurred, as they were described by the CI, that they can still convict him because he's obviously a drug dealer. And here's what he says. So even forgetting about Mr. Willis's testimony, you could convict Mr. Crawford on the statements that he made to law enforcement alone. And, again, he made no admission with regard to these two deliveries in his statements to law enforcement. Profits. Government's 38, a Rolex watch. Was that – is that objected to? Not in closing, no. These statements were not objected to. And is that really appealed here? No, there was – we're not appealing on the basis of prosecutorial misconduct. Right. So I'm having trouble understanding what point we should be looking at in terms of your appeal with reference to your past arguments. Here's my point, and I won't read the rest of it, but it references the pool table, all the furniture of these things. You're challenging the admission of the evidence. Of this evidence that the prosecutor very directly – Of the furniture. Of his possessions. And his statements as well. Okay. Because the prosecutor references all of these things very directly in closing and says even if you don't believe the CI, even if you don't believe his testimony, you can still convict him on the basis of all this other evidence. Mm-hmm. Now, I'm not trying to be critical of the prosecutor here. What happens is when you let – You can't be on the argument because you didn't appeal it. Right. So all you can do is say the evidence shouldn't have been admitted. Exactly. The argument is almost irrelevant since it wasn't appealed. In some ways. But it does point out, I believe, it very dramatically demonstrates how the – where the focus of this trial really was. And when you allow this evidence in, even if the prosecutor doesn't say anything about it, by allowing the jury to hear it, the district court invites them to reach these kind of conclusions on their own anyway. Even if nobody says they can. Because they're told they can review and consider all of the evidence. And the car, the Rolex watch, the pool table, none of these things had anything whatsoever to do with these two alleged deliveries. So if they believe the confidential informant, then he's being convicted for what that guy says he did. If they believed, but when you add all this other evidence and tell the jury you can consider all this other evidence, then you invite the jury to draw these improper conclusions. That it's okay to convict him based upon essentially what is clearly propensity evidence. He admitted he had dealt in drugs before. He had all these expensive things that must have been the profits of drug trade. Therefore, you can convict him even if you don't believe the CI. And that's improper. We don't try people on that basis in this country. We try them on the basis of what they're charged with and the proof that they actually committed those particular acts that they're charged with. None of this evidence, including Mr. Crawford's statement to the police, had any relevance to whether or not Mr. Crawford was the person who had delivered the drugs to the CI on those two particular occasions. Had no relevance whatsoever to that issue. Only to this broader issue of he's a drug dealer. He's done it before. He must have done it this time. And that's clearly propensity evidence. And the other evidence taken from the house, the items in the furniture, et cetera, it was used in a sense like propensity evidence here because it was tied to his drug dealing activities. But I think really that was more in the nature of 403 type evidence. Just not relevant.  There's really no evidence that, in fact, he had purchased these things with drug money. Was there a prejudice objection to it under 403? I believe there was, yes, to all of this type of evidence. And it was unduly prejudicial? Yes, Your Honor. Do you want to save your remaining time for rebuttal? May it please the Court, good morning.  Regarding the search warrant issue, Your Honors, if the Court recalls, and I direct the Court's attention to pages 5 and 6 of the brief that I submitted. I also was the trial counsel in this case. But set forth on pages 5 and 6, you'll see about nine or ten items listed that gave probable cause for issuance of the search warrant, what the defiant Detective Barr relied on. And in there, you'll see that the confidential informant told Detective Barr that Mr. Crawford lived in the Indian Trails area of Spokane. That's a neighborhood. Then based on Detective Barr's personal knowledge of the area, he was aware, once he matched up that address, West 5112 Pacific Park Drive, to Mr. Crawford, he was aware that that address was in that neighborhood, the Indian Trails neighborhood of Spokane. And, Your Honors, contrary to what the counsel suggests, Mr. Crawford was convicted on the two charges in the indictment, the controlled buys on September 18th of 2002 and August 29th of 2002. The issue regarding the evidence obtained from the search warrant and the evidence obtained on the day Mr. Crawford was arrested, the cash, the furniture, the RFI indicator, which is a counter-surveillance device, the electronics equipment, that evidence was offered as circumstantial evidence of drug trafficking, and I've cited some cases in my brief. It was not the statements that Mr. Crawford made to law enforcement on the day he was arrested about his, I believe one of the statements was that he started selling narcotics to support his habit. That was not propensity evidence. It was probative of Mr. Crawford's knowledge of his possession and distribution of the crack cocaine and the heroin on the two dates charged in the indictment. You say it comes in to show knowledge under Rule 404? I'm sorry, Your Honor, I... You're saying the evidence of his statement that he had previously dealt drugs comes in to show knowledge that he knew what he was giving the informant was cocaine or was crack? Actually, Your Honor, the statement that he... Mr. Crawford's statement about prior use and distribution of narcotics was offered to establish the CI's relationship with Mr. Crawford. The CI had a relationship that extended back to 1996. Did the CI testify about that? I believe, yes, Your Honor, the CI did indicate that he first met Mr. Crawford in 1996. Yes, Your Honor. Mr. Crawford's admission that he dealt in drugs was offered to... as relevant to the idea that the informant knew him and had bought drugs from him? Yes, Your Honor. I believe that he made a deal here that he was charged with. Well, it was also to explain the relationship the CI had with Mr. Crawford and also to provide the necessary context for the CI and Mr. Willis's testimony. What's your view of the relevance of Mr. Crawford's relationship to the informant? The fact that he, let's say, sold to him before? Your Honor, I'm sorry, Your Honor. The importance of that was the CI had a lot of baggage, if you will. He had had a very extensive criminal history. The two controlled buys occurred in a white Ford Taurus. At one of the controlled buys, only Mr. Crawford and the CI were present, and the other controlled buy, the CI, an individual by the name of Mr. Wofford, and Mr. Crawford were present. And that evidence was so Mr. Willis, what I'm saying, Your Honor, is Mr. Willis, the CI's credibility was also at issue in the case. Right. He was making the best deal he could with the government, I guess, on his own problems. Yes, Your Honor. Now, what about, let's put aside the statements made by Crawford. What about his possessions? You know, he's got a Rolex, he's got a pool table. What's that relevant to? Your Honor, that was, the United States offered that as circumstantial evidence of drug trafficking, and if Your Honors look at my closing argument, and I believe it begins at around SCR 640, or I've cited it in my brief, and the jury could have drawn an entirely different inference from that evidence. They could have drawn the inference that it came from a legitimate income source, and Mr. Crawford, when he was interviewed by the agents, admitted to them that he had a janitorial business and he made approximately $30,000 to $35,000 a year. Did a person making $35,000 a year have a pool table? I mean, you could probably get a pool table on ePay for a couple thousand dollars. That's probably correct, Your Honor. I haven't bought a pool table. I neither have either. But I just can't imagine they all cost, you know, a big fortune necessarily. Yes. I think the pool table in this case cost $2,100, and also there was evidence at trial that the residential neighborhood that Mr. Crawford lived in, I believe this came out through the testimony of a special agent with the Drug Enforcement Administration, Shine Cummings, who testified that the doors, the front doors on Mr. Crawford's residence were unlike the doors on the other residents in the house, as they had double, it was a very heavy, heavily constructed door, sort of a type of door you'd see more at a commercial establishment rather than a residence in that neighborhood of Spokane. I was just trying to understand the relevance of the pool table and the Rolex, which I don't have either of those right now, but I think I probably know some people who have pool tables or Rolexes, and I don't know what it's evidence of. Your Honor, if memory serves me correctly, Mr. Crawford indicated that when he was interviewed that the Rolex was an imitation. It was not a true Rolex watch, and then through further investigation, one of the agents who testified, he went to Pounder's Jewelers, a local jewelry store, and showed the Rolex watch to that jeweler, and the jeweler indicated that it was not an imitation, but it was the real thing. So that evidence was also offered to establish a misstatement made to a law enforcement officer. It looks like he's covering up an asset. Yes, Your Honor. Is there no other questions? I think there's no further questions from the panel. Thank you. Thank you, Your Honor. I'll respond to the last point that was brought up first. I think the question about the Rolex watch and the way the government responds to that is very indicative of what is going on here. Mr. Crawford didn't testify at this trial. His credibility was not an issue. So why is any misstatement to the police officer an issue in this case? Again, it's just another presentation of a bad act to show a propensity to do bad things. It has no relevance whatsoever to these two particular crimes that he was charged with, none. He didn't testify. His credibility was not an issue. So, again, it's just trying to paint Mr. Crawford as a bad character. I just took a look at this government's brief, and I believe they have argued that this evidence about the vehicle, about the pool table and these other items, and some of Mr. Crawford's own statements are relevant to show knowledge or intent or other issues that are arguably elements of the crime or could become issues at trial. But none of these things were really material issues at trial. Mr. Crawford didn't claim that he had given something to the CI but didn't know it was drugs. He didn't claim that he had done the acts charged but didn't intend to do them or that he had mistakenly done something. He didn't testify at all. His defense was simply the proof isn't good enough. The CI is not credible. He had contact with other people during both of these controlled buys. And there's questions about what's being heard on the tape, and he's not credible about who's saying what on the tape. It was simply, depending on the basis of the government's evidence, was not sufficient. He did not raise any of these specific matters as issues. So they were not material issues at trial. And that's not a basis for bringing in this kind of evidence then. And I think the cases are very clear on that. You can't say, well, if it's an element, we can bring in 403B evidence, even if it's not really a question that the jury is struggling with or that's being raised as a defense. It has to be a material issue at trial, and these things were not. Thank you. Thank you. The case of United States v. Crawford is submitted. And the final case for argument this morning, American Circuit Breaker v. Oregon Breakers.
judges: Brunetti, McKeown, Gould